ROMAN TOMASZEWSKI *vs.* ADOLPH MOROSE.

MAY 6, 1938.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

416

Moss, J.   This is an action of the case to recover for personal injuries sustained by the plaintiff and alleged to have been caused by the defendant's negligence. The defendant pleaded the general issue and the case was tried before a justice of the superior court and a jury. A verdict for the plaintiff was returned in the amount of $2959.50. A motion by the defendant for a new trial, based on the usual grounds, was granted in a decision by the trial justice, on the ground that the verdict was against the preponderance of the evidence and failed to do substantial justice between the parties. The case is now before us on a bill of exceptions by the plaintiff in which the only exception stated is to the above decision.

The plaintiff was his own sole witness on the question of negligence by the defendant. His testimony was in brief, as follows. On the morning of the accident, he was told by a Mr. Pasik that the defendant wanted to see the plaintiff at the Polish National Home, a club house. They were then near the defendant's grocery store and he saw the latter in his store door, beckoning the plaintiff to come in. When he entered there, he and the defendant talked together for a few minutes. A Mr. Miga, a friend of theirs, who died before

the trial, was in the store and also a man whom he did not know, by the name of Rae. The defendant then asked the plaintiff to help him and the two other men to bring his frigidaire machine from the cellar of the store to the street outside.

The four of them then went down stairs, he testified. The machine was in a further room of the cellar, and Rae and the defendant carried it onto the cellar steps, as far as the third step. The defendant then asked the plaintiff and Miga to help. The plaintiff did not want to soil his hands; so the defendant got him a rag. The defendant then went up to the fifth step, and stood there at the front or lighter end of the machine. The plaintiff stood on the steps, at the left side to any one looking up. Miga stood on the opposite side of the machine, on the second or third step, and Rae stood at the rear or heavy end of the machine. The defendant said: "All right, take hold. . . . Stick together. . . . All right, ready?" The plaintiff said he was ready and everybody said "All right." They counted, "One, two, three," and took hold together and they got the machine on the fourth step. Then in the same way they got it to the fifth step, and the defendant dropped the machine on the plaintiff's finger, which was crushed by the bottom of the machine. The plaintiff cried out: "Oh, my finger."

This was the plaintiff's story of how he got hurt. There was undisputed evidence that the machine was about twenty-four inches wide, twenty-five inches high and weighed, as it was being moved, between one hundred forty and one hundred fifty pounds; and that the steps were thirty-three inches wide.

The defendant's testimony was, in brief, as follows. The machine that was being carried up from his cellar at the time when the plaintiff was hurt was not the defendant's but was the property of the Rhode Island Radio and Electric Company. Rae was its employee and was in charge of the work. That company, three weeks before, had taken

away the defendant's machine to repair and overhaul it and had put in its place a machine of its own. When his machine was thus taken away to be repaired, he and Rae had carried it up from the cellar; and when it was brought back, on the day before the day of the accident, he and Rae had carried it down into the cellar. On that day and the next, the company's machine was disconnected and the defendant's machine reinstalled in its regular place by Rae.

On the morning of the accident, Miga and the plaintiff came into the defendant's store and the three of them were talking together, when Rae, who had been in the cellar, installing the defendant's machine, came up from there and asked the defendant to help him take the company's machine out to the truck. The two of them went down into the cellar and carried the company's machine from the further room to the foot of the stairs. Just then some one called to the defendant to come upstairs and wait on some customers, and he did so.

The plaintiff and Miga were then still in the store, talking. The latter asked the defendant where he was going. On being told that he had to go to the cellar, Miga, who had a store himself, asked the defendant how his frigidaire worked. When the defendant told him that it worked well, he said that he would like to go with the defendant and see how it worked. The defendant agreed and the plaintiff and Miga followed him downstairs. All three of them went into the further room and the defendant and Miga talked about the frigidaire.

Then the defendant left them there talking and looking over the machine and he went back to the company's machine at the foot of the stairs. He took hold of the front end of it, walking backward, Rae having hold of the heavier end and walking forward. When the defendant got up to the fifth step, he told Rae that he was going to rest the machine on the step and asked Rae to hold it. Rae agreed and the defendant let the machine down easily and rested it on the step.

Then, to get his feet out of the way and to get past the ceiling above his head, the defendant backed up a step or two, and was stooping down again to take hold of the machine, when he heard the plaintiff shout: "My finger. I got hurt. My finger." Then for the first time he saw the plaintiff on the left side of the steps, to one looking up, standing on the cellar floor. The defendant then told Rae to slide the machine down to the foot of the steps and he himself first went to the plaintiff and then went upstairs for something to put on the plaintiff's finger.

On cross-examination the defendant testified that he did not know that the plaintiff or Miga had come out of the further room until he heard the plaintiff cry out and then he saw the plaintiff and Miga near each other; that when he had let the machine down just before and stood up, he could not see to the left side of the steps, because of the ceiling; and that he never asked the plaintiff to help in moving the machine.

Rae told practically the same story of the accident as the defendant had told. In particular he said that when the defendant had gone up four or five steps backward, holding the front end of the machine, the latter said: "Wait a minute, until I get better hold", and then set his end down; that he himself held onto his end, while defendant got his feet up on the next step and stood straight up.

He then continued: "And all of a sudden there was a holler, and I felt the jar of the machine. It must have slid off the top step and landed on the next one, and just about the time I felt the jar I heard a holler. I could not understand what it was. So I said to Adolph, 'don't touch it.' He was just reaching down to pick it up again, and I just dropped it down, straight down on the steps, and slid it down, and then reached down and pulled it back out of the way." He added that he did not see the plaintiff at all at any time while picking the machine from the floor, but that when he and the defendant started up the steps, he saw two

men coming from the other part of the cellar, who went and stood on the left side of the steps, where he heard them talking with each other in a foreign language but could not see what they did, because of a post in between.

His testimony was in entire harmony with the testimony of the defendant and contradicted all of the most vital testimony of the plaintiff. There was no testimony which supported that of the plaintiff, where it was in conflict with that of the defendant, except in one very minor matter. The plaintiff testified, as above stated, that on the morning of the accident he met, near the defendant's store, a Mr. Pasik, who told him that the defendant wanted to see the plaintiff at their club; and that he then saw the latter standing in the doorway of his store and beckoning to him to come over.

This testimony was, in the main, supported by that of Pasik, who added that just before he saw the plaintiff, the defendant had asked him to tell the plaintiff, if he saw him, that the defendant wanted to see the plaintiff at the store. The defendant denied that he saw Pasik on that morning. Of some interest in this connection is the admitted fact that at a meeting of the directors of the Polish National Home, to which they all belonged, the plaintiff and the defendant and another man were appointed a committee to look into the matter of buying a cash register for the club.

In giving his decision on the defendant's motion for a new trial, the trial justice reviewed the testimony, particularly that of the two parties and Rae as to the handling of the machine, and stated that in his opinion the evidence, as to the plaintiff being invited to assist in carrying the machine up the steps, and the reasonable probabilities were strongly in favor of the defendant. His discussion of the testimony clearly shows that he disbelieved the testimony of the plaintiff that he was asked to help in carrying the machine up the steps and as to how the injury to his finger occurred. His conclusion shows that he granted the motion for a new trial for that reason and because in his judgment the verdict did not do substantial justice between the parties.

It is noteworthy, in this connection, that in his charge to the jury the trial justice told them, in substance and effect, that if the plaintiff was not invited by the defendant to assist him in carrying the machine up the steps, but threw himself into the situation, he was what the law calls a volunteer, and the defendant was not liable to him for any injury, unless the defendant was guilty of wilfulness or wantonness. He also charged them that there was no evidence of wilfulness or wantonness and that if the plaintiff was a volunteer, their verdict should be for the defendant. These portions of the charge were excepted to by the plaintiff, but the exceptions were abandoned, and therefore these portions of the charge are a part of the law of the case and cannot now be attacked as erroneous.

It is apparent in this case that the trial justice applied the proper rules in deciding a motion for a new trial, based on the ground that the verdict is against the preponderance of the evidence; and he found that the verdict was against the preponderance of the evidence and did not do substantial justice between the parties. There is nothing to show that he overlooked or misunderstood any of the material evidence. In this situation we cannot properly reverse his decision, unless from our examination and consideration of the evidence we are clearly convinced that he was wrong in his conclusion. *Simmons* v. *Simmons,* 56 R. I. 222, 227, 185 A. 133; *Spiegel* v. *Grande,* 45 R. I. 437, 123 A. 560; *Pepin* v. *Keough,* 105 A. 574 (R. I.); *Arnold* v. *Treat,* 90 A. 382 (R. I.).

We are not thus convinced, after examining and considering all the evidence as set forth in the transcript. We, therefore, cannot properly find that his decision was erroneous.

The plaintiff's exception is overruled, and the case is remitted to the superior court for a new trial.

*Walter I. Sundlun, Baker & Spicer,* for plaintiff.

*Joseph Janas, Edward F. McElroy, Walter J. Hennessey,* for defendant.